WESLEY L. WAGNER, MINOR, BY HIS NEXT FRIEND, MARGARET WAGNER v. BRADY L. EUDY AND ARCHIE L. EUDY, BY HIS GUARDIAN AD LITEM, BRADY L. EUDY.

AND

LANE WAGNER v. BRADY L. EUDY AND ARCHIE L. EUDY, BY HIS GUARDIAN AD LITEM, BRADY L. EUDY.

(Filed 23 May 1962.)

**1. Automobiles § 41c—**

Testimony held sufficient to support finding that defendant was operating his car on the left side of the highway and collided with a vehicle approaching from the opposite direction, and therefore the evidence required the submission of the issue of negligence to the jury irrespective of any other aspect of negligence.

**2. Automobiles § 49—**

Evidence held insufficient to show contributory negligence as a matter of law on the part of a passenger in riding in an automobile with a driver whose view of the highway was partially obstructed by frost on the windshield.

**3. Automobiles § 55—**

Evidence held sufficient on the question of the father's liability under the family purpose doctrine for the negligent operation of the vehicle by his minor son.

**4. Appeal and Error §§ 31, 54—**

Where appellants in apt time serve their case on appellees, and appellees file exceptions on the ground that the court's charge contained therein was only a fragment of the charge as actually given, and the trial court, upon appellants' request to settle the case finds that the charge appearing in the record was fragmentary because of the inability of the reporter to hear and take down the charge as given, but that the court could not then reconstitute the charge, a new trial will be awarded, since appellant, without fault, is entitled to have the appellate court have before it for review instructions to which he has aptly entered exceptions.

HIGGINS, J., dissenting.

PARKER, AND BOBBITT, JJ., join in dissent.

APPEAL by defendants from *Gambill, J.,* August 1961 Term of CABARRUS.

Wesley Wagner, seventeen-year-old son of Lane Wagner, occupant of an automobile owned by Brady Eudy, was injured about 7:00 a.m., 30 December 1959, when the Eudy car, operated by Archie Eudy, minor son of Brady Eudy, collided with a car owned and operated by Larry Hammill. The collision occurred near the crest of a hill. The Hammill car was traveling east, the Eudy car, west.

---

---

Wesley Wagner seeks damages for personal injuries sustained by him. Lane Wagner seeks compensation for loss of services of his son and medical expenses incurred on account of his son's injuries. To support their rights to recover, they allege: The Eudy automobile was a family purpose car used on the morning of the collision by the son with the consent of his father and as agent of the owner; the Eudy car was on the south, or driver's lefthand side of the highway when it collided with the Hammill automobile; Archie Eudy was operating the car on the wrong side of the road in violation of secs. 146 and 148 of c. 20 of the General Statutes; not only did he drive on the wrong side of the road, but he negligently failed to keep a proper lookout.

Defendants denied the allegations of negligence, denied that Archie Eudy was the agent of his father, and as an additional defense pleaded contributory negligence of Wesley Wagner.

The causes were consolidated for trial. Defendants moved for non-suit. The motions were overruled, and issues of negligence, contributory negligence, agency, and damages were submitted to the jury. The issues of negligence and agency were answered in the affirmative, contributory negligence in the negative. Damages for the son's injuries were fixed at $10,000, and $265 was awarded the father.

Judgments were entered on the verdicts. Defendants excepted and appealed. Defendants were allowed ninety days from 31 August 1961 to serve case on appeal, and plaintiffs sixty days thereafter to serve countercase or file exceptions.

*Webster S. Medlin for plaintiff appellees.*

*Hartsell, Hartsell & Mills by William L. Mills, Jr. and J. Maxton Elliott, and Williams, Willeford & Boger by John Hugh Williams for defendant appellants.*

RODMAN, J.  The evidence tending to fix the place where the collision occurred came from the Highway patrolman who was called to investigate the collision. Notwithstanding seeming inconsistencies in his testimony, we are of the opinion and hold it was sufficient to support a findng by the jury that Archie Eudy was operating his car to the left of his center of the highway, and this violation of the rules of the road was the proximate cause of the collision. This evidence, sufficient to require a finding of defendants' negligence, obviates the necessity of determining whether there was any evidence to support the allegation that the driver failed to keep a proper lookout.

As we read the complaints, plaintiffs do not allege negligence in operating with the windshield so covered with frost as to obstruct the driver's view; nor does defendants' evidence compel the conclusion

that Wesley Wagner was contributorily negligent in riding in a vehicle in which the driver could not see because of the frost on his windshield. This was likewise a question to be resolved by the jury.

There was evidence from which the jury could find that the Eudy automobile was a family purpose car, used at the time by the minor son of the owner with the owner's consent.

The court properly overruled the motions made by each defendant to nonsuit.

The official court reporter for Cabarrus County was present at the trial of and reported this case. She transcribed the evidence and the court's charge as she heard and understood it.

On 24 November 1961 appellants served their case on appeal on counsel for appellees. This service was in due time. The case served included a narrative statement of the testimony based on the reporter's transcript. It included the court's charge as taken by the reporter. It showed the exceptions taken by appellants to the court's rulings, to the charge as given, and to the failure of the court to charge on material aspects of the case. It contained a grouping of assignments of error as required by the rules of this Court. On the same day appellants served their case on appeal, counsel for plaintiffs and defendants stipulated and agreed "the foregoing statement of defendants' case on appeal and record as served upon the plaintiffs' attorney on the 24th day of November 1961, shall constitute the record and case on appeal, except for the charge of the Court, to which the plaintiffs are allowed the authorized time within which to serve countercase or exception if they so desire."

The charge appearing in appellant's statement of the case on appeal is insufficient to meet the requirements of G.S. 1-180, which imposes on the judge the duty to declare and explain the law arising on the evidence in the case. One of appellants' exceptions and assignments of error is directed to this failure of the judge to perform his duty.

Both by statute, G.S. 1-282, and by the terms of the stipulation it was the duty of appellees, if dissatisfied with appellants' statement of the case on appeal, to file a countercase or specific amendments to appellants' statement. If appellees file a countercase or specific amendments to appellants' statement of the case on appeal, appellants have fifteen days in which to accept the amendments or, if not willing to accept them, to call on the court to settle the disagreement. G.S. 1-283.

Appellees did not file exceptions to the case on appeal supplying what they claimed were the deficiencies in the court's charge or their version of the charge as given. Instead, they filed on 9 January 1962 a petition with Judge Gambill in which they said: ". . . during the latter part of November 1961, your petitioner was furnished with a

copy of the transcribed portion of the Court's charge to the jury, at which time your petitioner advised his Honor about the charge. The Court Reporter has transcribed only a very small portion of the Court's charge to the jury, a copy of which is attached hereto. The Court Reporter advises that she was unable to take down the charge. . . . That your petitioner is currently confronted with the preparation of a countercase on appeal that will reflect the Court's charge to the jury." The petitioner concluded with a prayer "that his Honor prepare a charge in the above captioned cases based upon the transcript of testimony and the issues presented in order that the charge may be included in the record on appeal with the express understanding that it is to represent the Court's opinion of the original charge." Attached to the petition was a transcript of the court's charge prepared by the court reporter from her notes.

On 15 February 1962 appellees filed exceptions to appellants' statement of the case on appeal. This was after the time allowed them in which to file a countercase or serve exceptions; but since the parties make no contention about the time in which to file the countercase or exceptions, it may be assumed that time to file exceptions was extended. As the basis for their exception, appellees say: "That the plaintiffs except to that portion of the record on appeal which is entitled, 'Judge's Charge To Jury,' on the grounds that it does not in fact include all of the Judge's Charge to the Jury but includes only a small fragmentary portion of the Judge's Charge, and therefore, the plaintiffs respectfully request that the court strike from the record on appeal that fragmentary portion of the Judge's Charge as has been included in the defendant's record on appeal purportedly as the 'Judge's Charge To Jury.' "

On 21 February 1962 the presiding judge, in response to appellants' request, fixed 28 February 1962 as the time to settle the case on appeal. On that date he signed an order stating: ". . . it is found that the record is in order except with respect to the portion of the record entitled 'Judge's Charge to Jury.' The court finds that the portion of the Court's Charge in the case as appears in the record is fragmentary and only constitutes a small portion of the Charge. It is ordered that the 'Judge's Charge to Jury' be revised to read, 'A portion of Judge's Charge to Jury.' " The order recites that before the judge started his charge to the jury his attention was called to the fact that the reporter seemed to have difficulty in hearing him. Thereupon he moved closer to the reporter. There was no further suggestion during his charge that the reporter did not hear and was not able to take his charge. The order then says: "The Court further is of the opinion that

it would be unfair to the parties concerned in this action for the Court to undertake to prepare a new Charge as a part of the record in this case, therefore, declines to prepare such Charge."

The litigant who loses is entitled to have the appellate court know what law the trial court told the jury was controlling on the facts of the case. To assure a litigant this right, the Legislature, with the adoption of the Code of Civil Procedure, gave him the right, by request made in apt time, to compel the trial judge to reduce his charge to writing, signed and filed as a part of the court record. G.S. 1-182.

The duty so imposed tended to reduce materially the number of cases which could be disposed of in a given time. Hoping to correct this loss of time without sacrificing accuracy, the Legislature, in 1913, directed county commissioners at the request of trial judges to employ a court stenographer charged with the duty "to well, truly, and correctly take down and transcribe the proceedings of the court, except the argument of counsel, and the charge of the court thus taken down and transcribed shall be held to be a compliance with section five hundred and thirty-six of the Revisal of one thousand nine hundred and five." (G.S. 1-182) C. 69 P.L. Extra Session 1913. The basic provisions of this statute were brought forward in each subsequent codification of our laws. C.S. 1461; G.S. 7-89.

Notwithstanding changes in phraseology since the adoption of the 1913 Act, we think the purpose of the original Act, i.e., to preserve an accurate record of the trial, remains.

With the adoption of the 1913 statewide statute and similar local statutes and an improvement in accurately reporting the events of a trial, requests that judges write out their charges have materially decreased. Today such a request is almost unknown.

It would indeed be unfortunate if trial counsel should come to feel that it was necessary to revert to requests to trial judges to write out their charges to be sure they could present to the appellate court an accurate statement of the trial court's charge to the jury.

The judge, when called on to settle a case on appeal, is not bound by the stenographic transcript of the trial. If he is convinced there is error in the transcript, he may correct it to speak the truth if his recollection of the events and what was said and done is sufficient for him to do so. If convinced of error but without recollection sufficient to supply the deficiencies or otherwise correct the error, he should refuse to settle the case on appeal for that reason.

The court's findings with respect to the events of the trial bring this appeal in a category of frequent occurrence prior to the use of official court reporters. The rule then uniformly applied was to award a new trial where, as here, appellant had been diligent in seeking a review,

but the court, for some cause not attributable to appellant, such as the loss of his notes, was unable to certify a correct and accurate statement of the errors of which appellant complained. The language of *Merrimon, J.*, in a similar factual situation, should, we think, be applied to this case. He said: "It must be taken that the *data*, necessary to enable the judge to settle the case upon appeal, cannot be supplied. He declares he cannot settle it for the lack of such information. The appellant has been reasonably diligent in his efforts to prosecute his appeal upon its merits, and is unable to do so by no fault of his own. He ought not, therefore, to suffer prejudice. In such a case the only remedy is to grant a new trial, and this will be done." *Burton v. Green,* 94 N.C. 215. Further illustration of the rule may be found in *McGowan v. Harris,* 120 N.C. 139; *Ritter v. Grimm,* 114 N.C. 373; *Clemmons v. Archbell,* 107 N.C. 653; *Jones v. Holmes,* 83 N.C. 108; *Simmons v. Andrews,* 106 N.C. 201; *Owens v. Paxton,* 106 N.C. 480; *Comrs. v. Steamship Co.,* 98 N.C. 163; *Chauncey v. Chauncey,* 153 N.C. 12, 68 S.E. 906; *Arrington v. Arrington,* 114 N.C. 115; *Hinton v. Greenleaf,* 115 N.C. 5; *Turner v. Gas Co.,* 171 N.C. 750, 87 S.E. 970; *Coleman v. Hood, Comr. of Banks,* 208 N.C. 430, 181 S.E. 280; *Chozen Confections, Inc. v. Johnson,* 220 N.C. 432, 17 S.E. 2d 505; *S. v. Powers,* 10 N.C. 376; 39 Am. Jur., New Trial, sec. 154; 3 Am. Jur. Appeal and Error, sec. 667.

Except for the judge's findings that he could not, in fairness to the parties, reconstitute his charge as actually given, we would remand the case to the court to settle the case on appeal; but it would be unseemly to remand in view of the court's statement that he cannot now correctly state his charge to the jury. For the reasons given there must be a

New trial.

HIGGINS, J., dissenting.   I am unable to agree the defendants make a sufficient showing to entitle them to another trial. As to the cause of the accident, the plaintiff offered two witnesses. Wesley L. Wagner testified he was a guest passenger in the Eudy Ford. At the time he entered the vehicle the windshield was covered with frost except for a small circular space in front of the driver. The plaintiff offered to remove the frost but the defendant driver assured him he had an adequate view. Further down the road the defendants' vehicle and a Chevrolet driven by Hammill collided head-on. The plaintiff received serious injuries. The highway patrolman testified the debris and the marks where the vehicles came together were in approximately the middle of the road which was 28 feet wide. The defendants did not offer evidence.

The judge charged the jury. The court reporter was present, apparently taking the charge in shorthand. At the conclusion of the charge the judge made inquiry if counsel had any request for further instruction. Neither side made a request. The jury found for the plaintiff on all issues. The defendants gave notice of appeal. The court made an order allowing 90 days for service of the case and 60 days for exceptions or countercase.

The court reporter made an affidavit, "that the Judge talked so rapidly and in such a low tone of voice that it was impossible for her to hear and clearly understand what he was saying, and it was impossible thereafter for her to translate his charge; that William L. Mills, Jr., attorney for the defendant, was sitting nearby and the Court Reporter indicated to him that she was not able to hear and understand the Judge, whereupon Mr. Mills interrupted the Court and stated that he did not believe the Reporter was getting his charge." *There was no complaint the jury did not hear.* The court had the stenographer move closer and proceeded with the charge.

Eighty-six days after the trial the defense counsel served his case on appeal which included, *as the charge,* such fragments thereof as the reporter was able to salvage from her notes. With knowledge at the time the charge was delivered that the reporter was likely to come up with an inaccurate and incomplete record, counsel did nothing to ascertain how much the stenographer had taken. It does not appear at what stage of the charge the reporter made her complaint — not to the court — but to defense counsel. How soon after the trial defense counsel found out about the actual condition of the reporter's notes does not appear. He should have done so immediately. Counsel never notified the judge of the reporter's failure but attempted to place upon the plaintiff the onus of securing a proper record or suffer the consequences the majority now visits upon him.

What is the defendant's complaint about the charge? The general one when specifics are absent. Failure to comply with G.S. 1-180. (a) Failure to review the evidence; (b) failure to declare and explain the law arising on the evidence; (c) failure to give equal stress to the contentions. The latter does not involve the evidence because the defendant did not have any.

Did the judge charge incorrectly? And, if so, in what respect? There is a presumption he charged correctly until a record — not a fragment — but a complete record indicates to the contrary. Counsel sat before the judge and heard the charge. He offered only the incomplete notes of the reporter. He has never until this day attempted to offer more. Any deviation from a correct charge should have impressed him sufficiently so that he could recall more than the (a), (b), and (c) now

relied on. The maneuvering after the trial was on the plaintiff's motion. The judge might well have said to plaintiff's counsel, What are you squawking about? You won the case.

The cases cited in support of a new trial without exception hold that the appellant must free himself from laches before he can claim the benefit of an incomplete record. Counsel for the defendant and the reporter knew from the time the charge was given that the record of it would probably be incomplete. We are not shown one single move initiated by defendant's counsel to have the defects supplied. The parties do not request the trial judge to state what he charged on negligence, or proximate cause, or burden of proof, or any other proposition of law. A busy judge, six months after a trial, is requested to rewrite the entire charge.

On the merits, the few sentences of material evidence by the plaintiff and the patrolman as to how and why the accident occurred, leave the impression that objections (a), (b), and (c) to the charge are insignificant. The issues and the uncontradicted evidence thereon are simple, direct, and clearcut. Nothing appears to indicate the jury was confused. The defendants demand a new trial. They have done too little to justify a demand for so much.

PARKER and BOBBITT, JJ., join in this dissent.